John P. Kristensen (SBN 224132)
Jesenia A. Martinez (SBN 316969)
Jacob J. Ventura (SBN 315491)
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: 310-507-7924
Fax: 310-507-7906
*john@kristensenlaw.com*
*jesenia@kristensenlaw.com*
*jacob@kristensenlaw.com*

Jarrett Ellzey (*pro hac vice pending*)
**HUGHES ELLZEY, L.L.P.**
1105 Milford
Houston, Texas
Telephone: 888-350-3931
Fax: 888-995-3335
*jarrett@hughesellzey.com*

***Attorneys for Plaintiff and all others
similarly situated***

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| REEVE SCHLEY, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> ONE PLANET OPS INC., a Delaware Corporation; BUYERLINK LLC dba CONTRACTORS.COM, a California limited liability company; and DOES 1 through 50, inclusive, and each of them, <br><br> Defendant. | Case No.: <br><br> **<u>CLASS ACTION</u>** <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> (1)   Violations of the TCPA, 47 U.S.C. § 227, et seq. (Cell Phone and Text); <br> (2)   Violations of the TCPA, 47 U.S.C. § 227, et seq. (Do Not Call); <br> (3)   Violations of the TCPA, 47 C.F.R. § 64.1200(d) (Internal Do Not Call); <br><br> **<u>DEMAND FOR JURY TRIAL</u>** |

1     Plaintiff REEVE SCHLEY ("Plaintiff" or "Schley"), individually and on behalf of all

2  other persons similarly situated, alleges the following upon information and belief based upon

3  personal knowledge:

4                          <u>**NATURE OF THE CASE**</u>

5     1.     Plaintiff brings this action for himself and others similarly situated seeking

6  damages and any other available legal or equitable remedies resulting from the illegal actions of

7  defendants ONE PLANET OPS INC., ("Defendant" or "One Planet") BUYERLINK LLC dba

8  CONTRACTORS.COM ("Defendant" or "BuyerLink") and DOES 1 through 50 (collectively

9  referred to throughout portions of this Class Action Complaint as "Defendants"), in contacting

10  Plaintiff as well as knowingly, and/or willfully contacting Plaintiff via text and unsolicited

11  telemarketing calls on Plaintiff's cellular telephone in violation of the Telephone Consumer

12  Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"), and , 47 C.F.R. § 64.1200(D) thereby

13  invading Plaintiff's privacy. Plaintiff, alleges as follows upon personal knowledge as to himself

14  and his own acts and experiences, and, as to all other matters, upon information and belief,

15  including investigation conducted by his attorney.

16     2.     Defendants own and operate a real-time lead service company in the online

17  marketing and advertising industry. In an effort to solicit potential customers, Defendants, or

18  employed agents use machines that had the capacity to store a list of phone numbers and send

19  out blast texts to cellular telephone calls, *en masse*, to consumers across the country. On

20  information and belief, Defendants and or its agents purchase "leads" containing consumers'

21  contact information and create electronic databases from which Defendants makes automated

22  calls.

23     3.     Defendants conducted wide-scale telemarketing campaigns and repeatedly made

24  contact with consumers' telephones—whose numbers appear on the National Do Not Call

25  Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47

26  U.S.C. § 227 (the "TCPA").

27     4.     The Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") was

28  enacted to protect consumers from unsolicited telephone contact exactly like those alleged in

Kristensen LLP
ATTORNEYS FOR PLAINTIFFS

1  this case. In response to Defendants' unlawful conduct, Plaintiff files the instant lawsuit and

2  seek an injunction requiring Defendants to cease all unsolicited telephone contacting activities

3  and an award of statutory damages to the members of the Class under the TCPA up to $500.00

4  per violation, together with court costs, reasonable attorneys' fees, and up to three times actual

5  monetary loss damages (for knowing and/or willful violations).

6        5.     This case arises from the transmissions of text messages and telephone calls to

7  the cellular telephones of Plaintiff and members of the class for the purpose of promoting

8  Defendants' services.

9        6.     By sending the illegal texts and making the telephone calls at issue in this

10  Complaint, Defendants caused Plaintiff and the members of a putative Class of consumers

11  (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that

12  necessarily accompanies the receipt of unsolicited and harassing text messages, as well as the

13  monies paid to their carriers for the receipt of such text messages and telephone calls.

14        7.     Plaintiff brings this class action against Defendants to secure redress because

15  Defendants willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47

16  U.S.C § 227, *et seq.* by sending text messages and causing unsolicited automated calls to be

17  made to Plaintiff and other class members' telephones.

18        8.     The TCPA was enacted to protect consumers from unsolicited text messages and

19  telephone calls exactly like those alleged in this case. In response to Defendants' unlawful

20  conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendants to halt

21  their illegal conduct, including to cease all unsolicited text messaging and telephone activities,

22  which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the

23  daily life of thousands of individuals nationwide. Plaintiff also seeks statutory damages on

24  behalf of himself and members of the class, and any other available legal or equitable remedies

25  resulting from the illegal actions of Defendants.

26  ///

27  ///

28  ///

**PARTIES**

9.       Plaintiff REEVE SCHLEY is a natural person and citizen in the state of California.

10.       Defendant ONE PLANET OPS INC. ("Defendant" or "One Planet") is Delaware corporation with its principal place of business at 1820 Bonanza Street, Ste. 200, Walnut Creek, California 94596. Defendant may be served with process by serving its registered agent, Incorporating Services, Ltd. at 7801 Folsom Boulevard, Suite 202, Sacramento, California 95826.

11.       Defendant BUYERLINK LLC dba CONTRACTORS.COM ("Defendant" or "BuyerLink") is a California limited liability company with its principal place of business at 1820 Bonanza Street, Ste. 200, Walnut Creek, California 94596. Defendant may be served with process by serving its registered agent, Incorporating Services, Ltd. at 7801 Folsom Boulevard, Suite 202, Sacramento, California 95826.

12.       Plaintiff does not yet know the identity of Defendant's employees/agents that had direct, personal participation in or personally authorized the conduct found to have violated the statute and were not merely tangentially involved. They will be named, as numerous District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) ("*American Blastfax*"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011) ("*Universal Elections*"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011) ("*Versteeg*"). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as

defendants. One Planet, BuyerLink and the yet to be identified DOES are collectively referred to herein as "Defendants."

13.      Whenever in this complaint it is alleged that Defendant(s) committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

14.      This action is brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"), and  47 C.F.R. § 64.1200(D), which is a federal statute.

15.      Subject matter jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question).

16.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from Contra Costa County, which is located in the Northern District of California. It is also the district in which One Planet's and BuyerLink's principal place of business is located.

17.      Since the acts or omissions which give rise to Plaintiff's claims occurred in Contra Costa County, Pursuant to Local Rule 3.2(c), this action must be assigned to the Oakland division of the Northern District Court.

## LEGAL BASIS FOR THE CLAIMS

18.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

19.      Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also

specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

20.     The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent. If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing. The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

21.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

///
///
///
///
///
///
///
///
///

22.     As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry

23.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or prerecorded message; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

24.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using

---

[1]     Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

25.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

26.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

27.     There are just a handful of elements need to be proven for violations of the Do Not Call provision of the TCPA.

**A.    <u>DO NOT CALL VIOLATIONS OF THE TCPA</u>**

28.     <u>More Than One Call within Any 12 Month Period</u>. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

29.     <u>Calls to Residential Lines on the Do Not Call List</u>. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

30.   <u>Or, Wireless Lines on the Do Not Call List</u>. Owners of wireless telephone numbers (aka mobile or cellular phones) receive the same protections from the Do Not Call provision as owners or subscribers of wireline ("landline") phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

31.   <u>The Affirmative Defense of Prior Express Consent</u>. The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) ("*Satterfield*")). "Prior express consent is an affirmative defense for which the defendant bears the burden of proof." See *Grant v. Capital Management Services, L.P.*, 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof"); see also *Robbins v. Coca-Cola Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013).

///
///
///
///
///
///
///
///

32.     <u>Telemarketers Must Maintain a List of Persons Requesting Not to Receive Calls</u>. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made) and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(4) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to

receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

**COMMON FACTUAL ALLEGATIONS**

33.     Defendants own and operate a real-time lead service company in the online marketing and advertising industry. Defendants have engaged in a scheme, to place text messages and place automated telephone calls, *en masse*, to consumers across the country. On information and belief, Defendants and or their agents purchase "leads" containing consumers' contact information and create electronic databases from which Defendants makes automated text messages that are not hand delivered. On information and belief, Defendants and/or their agents also obtain "leads" containing consumers' contact information and create an electronic database from which Defendants make automated calls through a sophisticated automatic telephone dialling system utilizing an artificial or pre-recorded voice. On information and belief, Defendants and/or their agents also obtain "leads" containing consumers' contact information by utilizing referral services. Defendants and/or third parties believe they have circumvented the TCPA and have legal consent to place the calls to these individuals. The problem is, on information and belief, Defendants and/or third parties forwards contact information for any live body who answers the call and communicates with the automated system, regardless of whether that person gave valid consent to receive subsequent marketing calls from Defendants.

34.     In Defendants' overzealous attempt to market its services, Defendants placed repeated and unwanted texts and automated telemarketing calls to consumers whose phone numbers are listed on the National Do Not Call Registry. Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

35.     Defendants knowingly made these telemarketing text messages and automated telemarketing calls without the prior express written consent of the recipients, and knowingly continue to message them after requests to stop. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

36.     Defendants have been engaging in serial telemarketing utilizing various telephone numbers beginning with the (925) area code from Contra Costa County, California.

**FACTS SPECIFIC TO PLAINTIFF REEVE SCHLEY**

**A.     TEXT VIOLATIONS**

37.     On or about August 7, 2019 at 3:50 p.m., Defendants began using an automated text-messaging platform, causing the following text message to be transmitted to Plaintiff's cellular telephone:

"Hi Good day! this is Mark Belfort from Contractors.com, We are a real-time Lead Service Company. just checking in if you're already available to take additional Home Improvement Projects from Homeowners. We are currently receiving a lot of Roofing Job request in LA We only charge $45 for Roofing, no annual fees, no subscription fees and no contracts or any long term commitment. Please let me know if you're interested."

38.     The message was sent from the number 925-465-2000, which is a dedicated number used for mass texts, not hand delivered messages.

39.     On or about August 9, 2019 at 8:45 a.m., Defendants using an automated text-messaging platform, caused a similar sales pitch text message from Contractors.com to be transmitted to Plaintiff's cellular phone. The message was sent from the number 925-378-3733, which is a dedicated number used for mass texts, not hand delivered messages.

40.     On or about August 21, 2019 at 3:39 p.m., Defendants using an automated text-messaging platform, caused at least three text messages to be transmitted to Plaintiff's cellular telephone with a similar sales pitch referenced in ¶ 37. These messages were sent from the same number 925-465-2000.

41.     Defendants' text message constitutes telemarketing because it promotes Defendants' goods and/or services, including its "lead service for roofing fees."

42.     At no point in time did Plaintiff provide Defendants with his express written consent to be contacted by text messages using an ATDS.

43.     At no point in time did Plaintiff provide Defendants with his express consent or express permission to be contacted by text messages using an ATDS.

44.     Plaintiff is the subscriber and/or sole user of the cellular telephone, at (310) 435-****.

45.     Upon information and belief, Defendants caused the same or similar text messages to be transmitted to the cellular telephones of consumers throughout the country.

46.     The impersonal and generic nature of Defendants' text message establishes that Defendants utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

47.     Defendants utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendants have the current capacity or present ability to store numbers using a random or sequential generator, and to dial such numbers.  Additionally, the equipment used by Defendants has the capacity to dial numbers from a list of numbers, automatically without human intervention.

48.     Defendants knowingly made these telemarketing text messages without the prior express written consent of the recipients, and knowingly continue to text them after requests to stop. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

///

///

**B.    TELEPHONE CALL VIOLATIONS**

49.    Plaintiff registered his cellular phone number with the area code 310 and beginning in 435-**** with the National Do Not Call Registry several years prior to Defendants' illegal texts and calls.

50.    Plaintiff is the regular carrier and exclusive user of the telephone assigned the number beginning in 310-435-****. The number is assigned to a cellular telephone service for which Plaintiff is charged for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

51.    Beginning on or about August 21, 2019, Plaintiff began receiving automated calls on his cellular telephone from various numbers including 925-465-2000, claiming to be Defendants.

52.    On or about September 6, 2019 at 10:55 a.m., Plaintiff received an automated call on his cellular telephone from the number 925-378-3733, claiming to be Defendants.

53.    On or about September 26, 2019 at 1:50 p.m., Plaintiff received an automated call on his cellular telephone from the number 925-322-2820, claiming to be Defendants.

54.    On or about September 26, 2019 at 4:22 p.m., Plaintiff received an automated call on his cellular telephone from the number 925-951-0936, claiming to be Defendants.

55.    On or about November 1, 2019, Plaintiff received an automated call on his cellular telephone from the number 925-357-3136, claiming to be Defendants.

56.    On or about December 20, 2019 at 11:22 a.m., Plaintiff received an automated call on his cellular telephone from the number 925-357-3136, claiming to be Defendants.

57.    Plaintiff has received approximately thirty (30) calls between August 2019 and December 2019, from various numbers all with the area code (925), claiming to be Defendants.

58.    Plaintiff never had a business relationship with Defendants.

59.    Plaintiff never provided Defendants with prior consent or invitation or permission to contact him on his phone via a text message or telephone call.

60.    Nonetheless, Defendants called Plaintiff utilizing a deceptive automated system at least twice on his phone during a twelve-month period.

61.    Plaintiff received at least two calls in which, after picking up the call, a voice

1   became audible after a several second delay of silence, leading Plaintiff to believe the several

2   second delay was caused by an ATDS system, connecting live call recipients with

3   telemarketers.

4   **C.      FACTS CONCERNING TEXTS AND TELEPHONE CALL VIOLATIONS**

5          62.     Defendants' calls/texts constituted calls that were not for emergency purposes as

6   defined by 47 U.S.C. § 227(b)(1(A)(i).

7          63.     Defendants' unsolicited telemarketing calls/texts caused Plaintiff extreme

8   aggravation and occupied his telephone line.

9          64.     Plaintiff has reason to believe Defendants texted thousands of telephone

10  customers to market their products and services.

11         65.     Plaintiff's overriding interest is ensuring Defendants cease all illegal

12  telemarketing practices and compensates all members of the Plaintiff Class for invading their

13  privacy in the manner the TCPA was contemplated to prevent.

14         66.     In order to redress injuries caused by Defendants' violations of the TCPA,

15  Plaintiff, on behalf of himself and a class of similarly situated individuals, bring suit under the

16  TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls voice and text to

17  individuals whose numbers are registered on the Do Not Call Registry as well as illegal text

18  messages to anyone cellphones.

19         67.     On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to

20  cease all illegal telemarketing and spam activities and an award of statutory damages to the

21  class numbers, together with costs and reasonable attorneys' fees.

22                                    **STANDING**

23         68.     Plaintiff has standing to bring this suit on behalf of himself and the members of

24  the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a

25  valid injury in fact; (b) an injury which is traceable to the conduct of Defendants; and (c) is

26  likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016)

27  at 6; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

28  ///

## A.   INJURY IN FACT

69.     Plaintiff has standing to bring this suit on behalf of himself and the members of the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendants; and (c) is likely to be redressed by a favorable judicial decision.  *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Robins v. Spokeo*, 867 F.3d 1108 (9th Cir. 2017) (cert denied. 2018 WL 491554, U.S., Jan. 22 2018); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).

70.     Plaintiff's injuries must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution.  *(Id.)*

71.     For an injury to be concrete it must be a de facto injury, meaning it actually exists.  In the present case, Plaintiff took the affirmative step of enrolling himself on the National Do-Not-Call Registry for the purpose of preventing marketing calls to their telephones. Such telemarketing calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. *See Soppet v. enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). All three of these injuries are present in this case. (See also *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).)

72.     Furthermore, the Third Circuit recently stated, Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, and sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character as previously existing "legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress. *Susinno v. Work Out World Inc.,* No. 16-3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

73.     For an injury to be particularized means that the injury must affect the plaintiff in a personal and individual way. *See Spokeo* at 7. Furthermore, Plaintiff is the person who pays

1  for the phone, and are the regular carrier and user of the phone. All of these injuries are

2  particular to Plaintiff.

3  **B.    TRACEABLE TO THE CONDUCT OF DEFENDANTS**

4        74.    Plaintiffs must allege at the pleading stage of the case facts to show that their

5  injury is traceable to the conduct of Defendants. In this case, Plaintiff satisfies this requirement

6  by alleging that Defendants, and/or agents of Defendants on behalf of Defendants, placed illegal

7  text messages and automated telephone calls to Plaintiff's phone.

8        75.    In the instant case, Defendants placed text messages and automated telephone

9  calls to Plaintiff's wireless/cellular phone.

10 **C.    INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION**

11       76.    The third prong to establish standing at the pleadings phase requires Plaintiffs to

12 allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.  In

13 the present case, Plaintiff's Prayers for Relief include a request for damages for each text made

14 by Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by

15 Congress and specifically redress the financial damages suffered by Plaintiff and the members

16 of the putative class.  Furthermore, Plaintiff's Prayers for Relief request injunctive relief to

17 restrain Defendants from the alleged abusive practices in the future. The award of monetary

18 damages and the order for injunctive relief redress the injuries of the past, and prevent further

19 injury in the future.

20       77.    Because all standing requirements of Article III of the U.S. Constitution have

21 been met, as laid out in *Spokeo, Inc. v. Robins,* 578 U.S. ___ (2016) and in the context of a

22 TCPA claim, as explained by the Ninth Circuit in *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th

23 Cir. 2016), Plaintiff has standing to sue Defendants on the stated claims.

24                                **CLASS ACTION ALLEGATIONS**

25 **A.    CLASS ALLEGATIONS**

26       78.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a),

27 (b)(2), and (b)(3) on behalf of himself and all others similarly situated, as a member of a

28 proposed class (hereafter "the Cell Phone Class," "the DNC Class," and the "Internal DNC

Class"):

**"Cell Phone Class":** All individuals within the United States, who within four years prior to the filing of the initial Complaint in this action, were sent a text message or received more than one telephone call via an ATDS made by or on behalf of Defendants within a 12-month period, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number, for the purposes of promoting Defendants' service, without their prior express written consent.

**"DNC[2] Class":** All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Defendants within a 12-month period; and, (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

**"Internal DNC Class":** All persons in the United States to whom: (a) received more than one telephone call made by or on behalf of Defendant(s); (b) promoting Defendants' goods or services; (c) more than 30 days after requesting not to receive further calls; (d) in a 12-month period; (e) on their cellular telephone line or residential telephone line; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.

79.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendants' counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released; and (7) individuals for whom Defendants have record of consent to place telemarketing calls.

80.    This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

---

[2]    "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

81.     Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

82.     Plaintiff and members of the Class were harmed by Defendant's acts in at least the following ways: Defendants, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their telephones, after Plaintiff and the Class members took the affirmative step of registering their numbers on the DNC, and/or contacted Plaintiff and members of the Class using a pre-recorded voice for telemarketing purposes without first obtaining prior consent.

**B.    NUMEROSITY**

83.     The exact sizes of the Class is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

84.     On information and belief, Defendants made text messages to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendants' records.

**C.    COMMONALITY AND PREDOMINANCE**

85.     There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

86.     Common questions for the Class include, but are not necessarily limited to the following:

(a)     Whether Defendants' conduct violated the TCPA;

(b)     Whether Defendants systematically made text messages to consumers who did not previously provide Defendants and/or their agents with prior express written consent to receive such messages;

(c)     Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the Do Not Call Registry;

(d)     Whether Defendants contacted Plaintiff and the Cell Phone Class members using an automatic telephone dialing system, without prior express written consent;

(e)    Whether Defendants complied with 47 CFR § 1200(d) requirement to maintain an internal DNC list and whether Defendants continued to contact members on that internal DNC list;

(f)    Whether members of the Classes are entitled to up to three times actual monetary loss based on the willfulness of Defendants' conduct; and

(g)    Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

87.    The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely violate the TCPA is correct, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D.    TYPICALITY**

88.    Plaintiff's claims are typical of the claims of the other members of the Classes.

89.    Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Classes.

**E.    ADEQUATE REPRESENTATION**

90.    Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

91.    Plaintiff has no interest antagonistic to those of the Defendants and their agents, and Defendants have no defenses unique to Plaintiff.

**F.    POLICIES GENERALLY APPLICABLE TO THE CLASS**

92.    This class action is appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes members, and making final injunctive relief appropriate with respect to the Classes as a whole.

93.    Defendants' practices challenged herein apply to and affect the Classes' members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

## G.   SUPERIORITY

94.   This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

95.   The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

96.   Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct.

97.   Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

98.   By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION

### VIOLATION OF TCPA, 47 U.S.C. § 227

**("Illegal Cell Phone and Text Claim" on behalf of Plaintiff and the Cell Phone Class)**

99.   Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

100.   The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.* and 47 C.F.R. §64.1200, *et seq.*

///

///

///

101. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

102. "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

103. Defendants – or third parties directed by Defendants – used equipment having the capacity to dial numbers without human intervention to make non-emergency text messages and phone calls to the cellular telephones of Plaintiff and the other members of the Cell Phone Class. Defendants contacted Plaintiff and members of the Cell Phone Class, on their cellular phones through a sophisticated automatic telephone dialling system utilizing an artificial or pre-recorded voice message and via text message.

104. When Plaintiff answered the repeated telephone calls from Defendants' caller identification numbers, all beginning with area code (925), a voice became audible after a several seconds of delayed silence. These facts led Plaintiff to believe that Defendants were utilizing an ATDS or pre-recorded voice while making the calls prior to connecting call recipients with telemarketers.

105. Plaintiff was annoyed by the unsolicited automated calls and wanted them to stop. When Plaintiff called Defendant's (925) telephone numbers back, he was greeted with an automated system that would abruptly redirect the call to hold with automated music audible.

106. These calls were made without regard to whether Defendants had first obtained express written consent to make such calls or send such texts. In fact, Defendants did not have prior express written consent to call or text the cell phones of Plaintiff and Cell Phone Class members when the subject calls and texts were made.

///

107.     Defendants violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency text messages to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

108.     As a result of Defendants' conduct, and pursuant to 47 U.S.C. § 227, *et seq*., and 47 C.F.R. § 64.1200, *et seq*., Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

109.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), award up to three times the amount of statutory damages recoverable by the members of the Class.

110.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

### VIOLATION OF TCPA, 47 U.S.C. § 227

### ("DNC Claim" on behalf of Plaintiff and the DNC Class)

111.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

112.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

113.     The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

///

114.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

115.     Defendants made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiff and members of the DNC Class never provided any form of consent to receive telephone calls from Defendants and do not have a record of consent to place telemarketing calls to them.

116.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC Class members received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

117.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

///
///
///
///
///
///
///
///
///

## THIRD CAUSE OF ACTION

### INTERNAL DNC CLAIM IN VIOLATION OF

### THE TELEPHONE CONSUMER PROTECTION ACT,

### 47 U.S.C. § 227, *ET SEQ.* (64 C.F.R. § 64.1200(D))

**("Internal DNC Claim" on behalf of Plaintiff and the Internal DNC Class)**

118.    Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

119.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

120.    Defendants made more than one unsolicited telephone call to Plaintiff and members of the Internal DNC Class within a 12-month period. Plaintiff and members of the Internal DNC Class never provided any form of consent to receive telephone calls from Defendants do not have a record of consent to place telemarketing calls to them and/or Plaintiff and members of the Internal DNC Class revoked consent.

121.    Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

122.    Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Internal DNC Class received more than one telephone call more than 30 days after revoking any purported consent in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Internal DNC Class and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

123.    To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

124.    Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

///

**ATTORNEY'S FEES**

125.    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

126.    Plaintiff is entitled to recover reasonable attorney fees under Rule 23 of the Federal Rules of Civil Procedure, California law, and requests the attorneys' fees be awarded.

**JURY DEMAND**

127.    Plaintiff, individual and on behalf of the Classes, demand a jury trial on all issues triable to a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

(a)    An order certifying the Cell Phone Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, Kristensen LLP as lead Class Counsel;

(b)    An order certifying the DNC Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, Kristensen LLP as lead Class Counsel;

(c)    An order certifying the Internal DNC Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, Kristensen LLP as lead Class Counsel;

(d)    An award of actual and statutory damages for each and every violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

(e)    An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

(f)    An injunction requiring Defendants and Defendants' agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

1      (g)      An award for the class representative;

2      (h)      Pre-judgment and post-judgment interest on monetary relief;

3      (i)      An award of reasonable attorneys' fees and court costs; and

4      (j)      All other and further relief as the Court deems necessary, just, and proper.

Dated:  January 9, 2020          Respectfully submitted,

By:  */s/ John P. Kristensen*

John P. Kristensen (SBN 224132)
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone:  (310) 507-7924
Fax:  (310) 507-7906
*john@kristensenlaw.com*

Jarrett L. Ellzey (*pro hac vice pending*)
**HUGHES ELLZEY, LLP**

**Attorneys for Plaintiffs**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all such triable claims.

Dated:  January 9, 2020                    Respectfully submitted,

                              By:  */s/ John P. Kristensen*

                                    John P. Kristensen (SBN 224132)
                                    **KRISTENSEN LLP**
                                    12540 Beatrice Street, Suite 200
                                    Los Angeles, California 90066
                                    Telephone:  (310) 507-7924
                                    Fax:  (310) 507-7906
                                    *john@kristensenlaw.com*

                                    Jarrett L. Ellzey (*pro hac vice pending*)
                                    **HUGHES ELLZEY, LLP**

                                    **Attorneys for Plaintiffs**