UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REEVE SCHLEY,<br><br>    Plaintiff,<br><br>v.<br><br>ONE PLANET OPS INC, et al.,<br><br>    Defendants. | Case No. 20-cv-00203-EMC<br><br>**ORDER FINDING MOOT IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 19 |

    Plaintiff Reeve Schley has filed a class action against Defendants One Planet Ops Inc. and Buyerlink LLC dba contractors.com, asserting claims for violation of the Telephone Consumer Protection Act ("TCPA"). Mr. Schley alleges that Defendants both texted him and called him in violation of the statute. Currently pending before the Court is Defendants' motion to dismiss. Having considered the parties' briefs, the Court hereby finds the motion moot in part and otherwise **DENIES** the motion.

##     I.    FACTUAL & PROCEDURAL BACKGROUND

    In his complaint, Mr. Schley alleges as follows.

A.    Text Messages

    Mr. Schley is the subscriber and/or sole user of a cell phone with the following number: (310) 435-\*\*\*\*. *See* Compl. ¶ 44. Between August 7 and 21, 2019, Defendant sent Mr. Schley multiple text messages (at least 5) the content of which was as follows (or something similar):

> Hi Good day! this is Mark Belfort from Contractors.com, We are a real-time Lead Service Company. just checking in if you're already available to take additional Home Improvement Projects from Homeowners. We are currently receiving a lot of Roofing Job request[s] in LA[.] We only charge $45 for Roofing, no annual fees,

> no subscription fees and no contracts or any long term commitment.
> Please let me know if you're interested.

Compl. ¶ 37; *see also* Compl. ¶¶ 39-40.[1] The text messages were sent from numbers that are "dedicated number[s] used for mass texts, not hand delivered messages." Compl. ¶ 38; *see also* Compl. ¶¶ 39-40. Mr. Schley did not give consent to be contacted via text messages. *See* Compl. ¶ 42.

B.  Telephone Calls

As noted above, Mr. Schley is the subscriber and/or sole user of a cell phone with the following number: (310) 435-\*\*\*\*. *See* Compl. ¶ 44. Mr. Schley registered his cell phone with the National Do Not Call Registry several years before the events giving rise to this lawsuit. *See* Compl. ¶ 49.

Between August 2019 and December 2019, Mr. Schley received approximately 30 phone calls from Defendants. *See* Compl. ¶ 57; *see also* Compl. ¶¶ 51-56. Mr. Schley never gave consent to be contacted by phone. *See* Compl. ¶ 59.

C.  Causes of Action

Based on, *inter alia*, the above allegations, Mr. Schley asserted the following TCPA causes of action in his complaint.

(1) Violation of 47 U.S.C. § 227(b)(1)(A)(iii). This statute prohibits a person from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice – . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

(2) Violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c). The regulation provides, *inter alia*, that "[n]o person or entity shall initiate any telephone solicitation to . . . (2) A residential telephone subscriber who has registered his or

---

[1] It appears that Mr. Schley was sent this message because he is affiliated with a company that does, *inter alia*, contracting work. *See* Part II.C, *infra* (addressing Defendants' request for judicial notice).

2

her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

(3) Violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d). The regulation provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). The procedures must meet certain specified minimum standards (*e.g.*, a written policy, personnel training, etc.). *See id.*

## II. <u>DISCUSSION</u>

A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

3

possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

In the pending motion to dismiss, Defendants moved to dismiss all three TCPA causes of action asserted by Mr. Schley.

B. Second and Third Causes of Action

As indicated above, the second and third TCPA claims involve calls to residential telephone subscribers. Defendants have asked the Court to take judicial notice that the cell phone identified in the complaint is one associated with a business (Seed Furniture, Inc.) such that they cannot be held liable with respect to these causes of action. In his opposition brief, Mr. Schley states that he is voluntarily dismissing these claims for relief – although not for the reasons articulated by Defendants – and asks that the Court dismiss the claims without prejudice.

Federal Rule of Civil Procedure 41 provides that a "plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A). "Unless the notice or stipulation states otherwise, the dismissal is without prejudice." Fed. R. Civ. P. 41(a)(1)(B). In light of Mr. Schley's statement in his opposition brief and Rule 41(a)(1), the second and third causes of action shall be dismissed without prejudice.

C. First Cause of Action: Text Messages

As indicated above, the first cause of action is predicated on a TCPA provision providing that

> any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any *automatic telephone dialing system* or an artificial or prerecorded voice – . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(b)(1)(A)(iii). According to Defendants, there are insufficient allegations to support Mr. Schley's claim that an automatic telephone dialing system ("ATDS") was used to send out the text messages.

For text messages, courts have considered various factors (none of which is dispositive) in

assessing the plausibility of the use of an ATDS. For example:

- The nature of the message. A generic or impersonal message suggests the use of an ATDS. So too does a promotional message. *See, e.g.*, *Flores v. Adir Int'l, LLC*, No. CV 15-00076-AB (PLAx), 2015 U.S. Dist. LEXIS 92176, at *13 (C.D. Cal. July 15, 2015) ("[T]he defendants in those cases 'had no other reason to be in contact with [the] Defendants,' and the promotional nature of the text messages suggested at least some level of random targeting."), *rev'd on other grounds by Flores v. Adir Int'l, LLC*, 685 F. App'x 533 (9th Cir. 2017).

- The number or frequency of messages. *See Mogadam v. Fast Eviction Serv.*, No. SACV 14-01912 JVS (RNBx), 2015 U.S. Dist. LEXIS 49045, at *6 (C.D. Cal. Mar. 30, 2015). Repetitive messages sent over a short period of time suggest the use of an ATDS. *See, e.g.*, *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 U.S. Dist. LEXIS 183095 at *15 (M.D. Tenn. Nov. 19, 2014) (finding plaintiff sufficiently alleged use of ATDS based on allegations that "[text] messages were repeated within a short span of time and consisted of the same content").

- "[T]he ability to respond to or interact with the text messages (i.e., sending 'Stop')." *Armstrong v. Investor's Bus. Daily, Inc.*, No. CV 18-2134-MWF (JPRx), 2018 U.S. Dist. LEXIS 216246, at *16 (C.D. Cal. Dec. 21, 2018).

- The relationship between the parties. *See Mogadam*, 2015 U.S. Dist. LEXIS 49045, at *6. If the parties had a pre-existing relationship, that would suggest that an ATDS was not used. Also, if the defendant had a specific reason to contact the plaintiff, that might also suggest an ATDS was not used.

- Whether "identical messages were sent to many potential customers at the same time." *Izsak*, 191 F. Supp. 3d at 904. This, of course, would suggest the use of an ATDS.

- Whether a SMS short code or long code was used to send the text. The use of a short code suggests the use of an ATDS. However, the use of a long code does not preclude the use of an ATDS. *See Gerrard v. Acara Sols. Inc.*, No. 18-CV-

5

1041V(F), 2019 U.S. Dist. LEXIS 108038, at *39-40 (W.D.N.Y. June 27, 2019) ("Although autodialed messages are more typically sent using short-code numbers, a long-code telephone line number can also support use of an autodialer."). In *Gerrard*, for example, the court held that, "given the nature of Defendant's business, which seeks to induce the recipient of Defendant's job-related text messages to contact Defendant, it is plausible that to avoid creating an adverse impression upon a recipient of Defendant's text message that Defendant's calls came from an autodialer anonymously seeking out recipients to apply for a specific job, Superior elected to use the long-code, the 844 number, instead of a short-code number that would be more indicative to the recipient of use of autodialer, one nevertheless technically capable of transmitting calls by an autodialer. Therefore, in the context of Defendant's business of sending recruitment messages, it is a reasonable inference, as Plaintiff alleges, that the long-code number associated with an out-going text messaging only line was used by Defendant to support the use of an autodialer, despite the absence of an alleged use of a short-code number, a factor more typically aligned with use of an ATDS." *Id.* at *40-41

Taking into account factors such as the above, Mr. Schley has alleged enough to support a plausible claim of use of an ATDS in conjunction with the sending of text messages. For example, he has alleged that he (one person) received multiple text messages from Defendants (at least 5), that the messages had the same basic content (*i.e.*, were repetitive), that the messages were promotional in nature (*e.g.*, there was not a specific reason for Defendants to contact him), and that the messages were sent over a relatively short period of time (*i.e.*, 2 were sent between August 7 and 9, 2019, and 3 were sent on August 21, 2019).

The fact that the text messages were sent with a long code, as opposed to a short code, is not dispositive. As noted above, the use of a long code does not preclude the use of an ATDS. Furthermore, the fact that Defendants sent the messages to Mr. Schley because he is affiliated with Seed Furniture, a company that provides contracting services, is immaterial. The fact remains that the messages were promotional in nature, and there is nothing to indicate that Mr. Schley or Seed

6

Furniture had some kind of pre-existing relationship with Defendants. *See, e.g.*, Compl. ¶ 58 (alleging that "Plaintiff never had a business relationship with Defendants"). Finally, the fact that the messages refer to roofing job requests in Los Angeles – where Seed Furniture is located – is also immaterial. The geographical limitation alone does not make the messages nongeneric or personal in nature. The bottom line is that it seems plausible that an ATDS could have been used to contact contractors in the Los Angeles area, of which Mr. Schley/Seed Furniture was one. To the extent Defendants argue that it is "'just as conceivable that the text messages were done by hand, or not using an ATDS,'" Reply at 4, the Ninth Circuit has indicated that equal plausibility means a plaintiff survives a 12(b)(6) challenge. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible.").

D. <u>First Cause of Action: Telephone Calls</u>

Defendants argue next that Mr. Schley has failed to plausibly allege use of an ATDS in conjunction with the phone calls he received. As above, Mr. Schley has alleged enough to overcome the 12(b)(6) challenge. In particular, he has alleged that, in the span of just a few months (between August and December 2019), he received about 30 phone calls from Defendants. In addition, he "received at least two calls in which, after picking up the cell, a voice became audible after a several second delay of silence." Compl. ¶ 61. *See, e.g.*, *O'Connor v. Lyft, Inc.*, No. 16-cv-00351-JSW, 2016 U.S. Dist. LEXIS 153705, at *12 (N.D. Cal. Apr. 14, 2016) (noting that "an allegation of a 'telltale pause' between the time the plaintiff answered a call and the time an agent began speaking has been found sufficient to support an inference that calls were made using an ATDS"). When these allegations are taken *together* (in their papers, Defendants focus only the "dead air" allegations and not the allegations regarding the number of phone calls over a relatively short period of time, *see, e.g.*, Reply at 1 (noting that there was dead air on only 6.67% of the calls received by Mr. Schley)), it is reasonable to infer than an ATDS was used – particularly in the absence of any discovery from Defendants. *Cf. Might v. Capital One Bank*

7

*U.S., N.A.*, No. CIV-18-716-R, 2019 U.S. Dist. LEXIS 21379, at *9 (W.D. Okla. Feb. 11, 2019) (holding that plaintiff had made sufficient factual allegations on "capacity" – as that term is used in § 227(a)(1) – "to avoid dismissal [at the 12(b)(6) phase], given that the relevant information to support his contention lies exclusively in the hands of the Defendant").

Defendants rely on *Smith v. Aitima Med. Equip., Inc.*, No. ED CV 16-00339-AB (DTBx), 2016 U.S. Dist. LEXIS 113671 (C.D. Cal. July 29, 2016), to argue that an allegation of "'dead air'" is not enough to support a claim for use of an ATDS. But *Smith* is distinguishable as the plaintiff in the case received only *one* phone call from the defendant. The *Smith* court distinguished the case before it from other cases precisely because of this fact.

> In *Loveless*, "dead air" was heard after answering the phone on several occasions and the court found "the allegations regarding the 'dead air' plaintiff experience[d] with respect to several calls sufficient to survive a motion to dismiss." *Loveless v. A1 Solar Power, Inc.*, 2015 U.S. Dist. LEXIS 96429 (C.D. Cal. July 23, 2015). Experiencing dead air on several calls raised a reasonable inference that the caller used an ATDS. Plaintiff also cites the *Evans* case to support her claim that hearing a pause is sufficient to infer use of an ATDS. But there, the plaintiff alleged that defendant used an ATDS because he alleged multiple phone calls, that the calls continued after he specifically asked the defendant to stop calling, he heard a brief silence after answering many of the calls, and the calls were frequent and persistent. *Evans v. National Auto Division, L.L.C.*, 2016 U.S. Dist. LEXIS 29348 (D.N.J. Mar. 8, 2016).
>
> . . . . [In *Oliver v. DirecTV, LLC*, 2015 U.S. Dist. LEXIS 47964], [the plaintiff] alleged that on at least three of the twenty-five calls he received, he heard a pause before a live representative began speaking, that he was always routed to a different account manager, and that he informed defendant that he did not want to receive the calls, yet they continued. . . . In these cases and the others cited by Plaintiff in her Opposition, the plaintiffs alleged hearing dead air or a pause on several phone calls *in addition to other allegations* of numerous calls, no voicemails, persistency of calls, and callbacks to a prerecorded voice. *Turning to the case before the Court, Plaintiff has alleged hearing only one pause on only one phone call.* The pause could be an accidental hang up, a mistake from someone realizing they had the wrong number, a bad connection, or the use of an ATDS. . . . *One call and one pause, standing alone, do not take the claim of the use of an ATDS beyond the speculative level.*

*Id.* at *15-18 (emphasis added).

In the instant case, Mr. Schley has alleged more than one phone call from Defendants – about 30 total in a relatively short time span. Moreover, he has alleged that, in at least two

8

instances (not just one), he encountered the dead air issue. To the extent Defendants argue that "[the] delay in only 6.67 percent of the calls received is more likely a result of an inattentive caller than an ATDS," Reply at 1, that argument is speculative and does not negate the opposite inference. It is plausible that there was an inattentive caller but it is equally plausible that an ATDS was used – when the "dead air" allegations are taken in conjunction with the allegations that Mr. Schley received about 30 phone calls in just a few months' time.

### III. CONCLUSION

For the foregoing reasons, the Court denies the motion to dismiss with respect to the first TCPA cause of action. Because Mr. Schley has voluntarily dismissed the second and third causes of action (without prejudice), the motion to dismiss on these claims is moot.

This order disposes of Docket No. 19.

**IT IS SO ORDERED**.

Dated: March 18, 2020

_____
EDWARD M. CHEN
United States District Judge